

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                             No. CR 03-425 RB/JC

ALVIN CHARLES JOHNSON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's Motion to Suppress (Doc. 55), filed September 29, 2003, pursuant to Rules 12(b)3 and 41(f) of the Federal Rules of Criminal Procedure. Having heard the testimony and reviewed the submissions of the parties and the relevant law, the Court finds that the motion is not well-taken and should be denied.

### I. Background.

On February 15, 2003, at 11:45 a.m., Alvin Charles Johnson (hereinafter "Alvin") entered the United States Border Patrol checkpoint located on New Mexico Highway 70, just west of Alamogordo, New Mexico. (U.S.'s Resp. to Def.'s Mot. to Supp. 1). Alvin was driving a blue refrigerated tractor-trailer bearing Oklahoma plates. *Id.* Alvin was with passenger and co-defendant, Bruce Johnson. *Id.* at 2. Border Patrol Agent Ricardo Sanchez was the first agent to encounter Alvin. *Id.* Agent Sanchez noticed the name "Roco" on the driver side door. *Id.* He then greeted Alvin by the name "Roco" and asked how he was doing. *Id.* at 2, ¶ 1. Alvin did not make eye contact with Agent Sanchez, but rather nervously gripped the steering wheel. *Id.*



Agent Sanchez then asked both Alvin and Bruce Johnson if they were United States citizens. *Id.* at 2, ¶ 1. Alvin was then asked what they were transporting. *Id.* He did not respond. *Id.* The passenger, Bruce Johnson, immediately replied that they were coming from California while handing Agent Sanchez a bill of lading. *Id.* The bill of lading indicated that the truck was carrying a cargo of produce. *Id.* Agent Sanchez then asked Alvin if the truck was sealed or locked. Once again, Alvin did not reply, but passenger, Bruce Johnson, responded that the truck was locked. *Id.* Agent Sanchez then asked Alvin for consent to look into the trailer and, once again, Alvin did not answer. Passenger, Bruce Johnson gave Agent Sanchez his consent to look into the trailer. *Id.* at 2, ¶ 2.

Agent Sanchez directed Alvin to pull over to a secondary checkpoint. *Id.* at 3. The uncontradicted evidence presented during the motion to suppress hearing, established that approximately two minutes had elapsed before Agent Sanchez directed the trailer to pull over to the secondary checkpoint. (Mot. to Suppress Hr'g Tr.). As Agent Sanchez was walking to the secondary inspection area, passenger, Bruce Johnson, got out of the tractor, went to the rear of the trailer, and unlocked the padlock. (U.S.'s Resp. to Def.'s Mot. to Supp. 3 ¶ 1). Alvin remained in the tractor. *Id.* When the door was opened, Agent Sanchez could see marked produce lettuce boxes on pallets and also several, brown, unmarked cardboard boxes on top of the produce boxes. *Id.*

Agent Sanchez asked passenger, Bruce Johnson, what was in the brown cardboard boxes. *Id.* at 3, ¶ 2. Bruce Johnson stated that it was all produce. *Id.* Agent Sanchez then asked Bruce Johnson for consent to open one of the brown boxes. *Id.* Bruce Johnson crossed his arms, started shaking his head and said, "do what you have to do." *Id.* Agent Sanchez then took Alvin and Bruce Johnson to a waiting area near the trailer, conducted a pat down search, and requested

2

identification from both of them to run criminal background checks. *Id.*

Bruce Johnson told Agent Sanchez that he had no identification on him because he had left his wallet in the cab. *Id.* at 4, ¶ 2. Agent Sanchez asked for permission to inspect the inside of the cab before he allowed Bruce Johnson to retrieve his wallet. *Id.* Bruce Johnson agreed. *Id.* As Agent Sanchez entered the cab, he detected a very strong odor of marijuana and saw a bag of marijuana and rolling papers. *Id.* at 4, ¶ 3. Agent Sanchez placed Alvin and Bruce Johnson under arrest after discovering the marijuana. *Id.* at 5. Agent Sanchez then searched the entire tractor-trailer. *Id.* at 5. The brown boxes were opened and approximately seven hundred and twenty-one pounds of marijuana were seized. *Id.*

II. Analysis.

1. **Whether the detention by the United States Border Patrol implicates Alvin's Fourth Amendment rights?**

Alvin argues that, once his immigration status had been determined, his continued detention without a warrant, consent or probable cause violated the Fourth Amendment to the United States Constitution. (Mot. to Suppress Hr'g Tr.). The United States argues that Agent Sanchez's search and seizure did not violate the Fourth Amendment because he had the requisite reasonable suspicion to briefly detain Alvin so as "to investigate, confirm, or dispel his suspicion." (U.S.'s Resp. to Def.'s Mot. to Supp. 16 ). In the process of investigating his suspicion, Agent Sanchez uncovered illegal narcotics. *Id.*

The Tenth Circuit has previously held that during a routine fixed-checkpoint stop, a border patrol agent may ask questions reasonably related to his duties and explore suspicious circumstances. *United States v. Massie*, 65 F.3d 843 (10th Cir. 1995). This exploration, however, must be brief and unobtrusive; further detention of an individual beyond the scope of a

3

routine checkpoint stop must be based upon reasonable suspicion, consent, or probable cause. *Id. See United States v. Preciado*, 966 F.2d 596, 598 (10th Cir. 1992) (difficulty recollecting basic details about one's travels can be suspicious circumstance); *see United States v. Rascon-Ortiz*, 994 F.2d 749 (10th Cir. 1993) (holding that nervousness can be suspicious circumstance). Border Patrol agents have "virtually unlimited discretion to selectively refer cars to the secondary inspection area." *United States v. Ludlow*, 992 F.2d 260, 263-264 (10th Cir. 1993).

Here, the totality of suspicious factors warranted Agent Sanchez's further detention and investigation of Alvin. First, Alvin appeared nervous and did not respond to a series of questions concerning the cargo and its destination; instead, he gripped the steering wheel tightly and did not make eye contact. (Mot. to Suppress Hr'g Tr.). Second, produce is not typically transported with a padlock. *Id.* Third, Agent Sanchez noticed different color boxes in the trailer that were not noted on the bill of lading. *Id.* Fourth, the route chosen from California to New York that veered into New Mexico did not make commercial sense. Agent Sanchez had reasonable suspicion that warranted additional questioning.

Agent Sanchez then proceeded to conduct a criminal background check on Alvin and Bruce Johnson. (Mot. to Suppress Hr'g Tr.) Bruce Johnson gave Agent Sanchez consent to inspect the tractor cab before Bruce Johnson retrieved his identification. *Id.* Upon entering the cab, Agent Sanchez smelled a strong odor of marijuana and found a bag of marijuana. *Id.* He then placed both Alvin and Bruce Johnson under arrest. *Id.* Pursuant to this lawful arrest, Agent Sanchez conducted a search of the entire tractor-trailer. *Id.* The brown boxes were opened and marijuana was uncovered.

2. **Whether Alvin has standing to assert a Fourth Amendment violation?**

The United States argues that Alvin does not have standing to challenge passenger Bruce

Johnson's consent or lack thereof to search the contents of the tractor-trailer. (U.S.'s Resp. to Def.'s Mot. to Supp. 7 ¶ 1). Alvin argues that the initial detention ripened into an improper arrest without probable cause and therefore any statements or evidence gleaned thereafter must be suppressed. (Mot. to Suppress Hr'g Tr.).

The Supreme Court has previously held that "Fourth Amendment rights are personal rights which may not be vicariously asserted," *Alderman v. United States*, 394 U.S. 165, 174 (1969). It is immaterial if evidence sought to be introduced against a defendant was obtained in violation of someone else's Fourth Amendment rights. *Rakas v. Illinois*, 439 U.S. 128 (1978). Therefore, even if the evidence established that the search conducted by the Border Patrol Agents here was illegal, if Alvin does not assert a personal Fourth Amendment violation, he has no standing to object to the evidence that will be introduced against him.

To determine whether a search has violated the rights of a particular defendant, the Supreme Court considers two factors: whether the defendant manifested a subjective expectation of privacy in the area searched, and whether society would recognize that expectation as objectively reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979). A defendant claiming a Fourth Amendment violation has the burden of proof as to each of these two factors. *See id.*

Here, Alvin did not have a subjective expectation of privacy that would implicate the Fourth Amendment. When asked what the contents were and where they were being transported, Bruce Johnson provided Agent Sanchez with all the information. (U.S.'s Resp. to Def.'s Mot. to Supp.) Alvin did not object to Agent Sanchez's request to conduct a search. Indeed, Alvin's indifference toward Agent Sanchez's questions demonstrates that he did not manifest any privacy expectations. Since Alvin has not satisfied the first *Smith* factor, the second *Smith* factor need not be considered.

5

## III. Conclusion.

The initial detention and subsequent questioning were supported by reasonable suspicion and are therefore not constitutionally defective. Additionally, Alvin did not have a subjective expectation of privacy in the tractor-trailer that would implicate his Fourth Amendment rights.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Suppress (Doc. 55), filed September 29, 2003, is **DENIED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**